UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| VICKI MOORE, individually and in her capacity as director of the Shelby County Animal Care Coalition, | ) ) ) ) | |
| | ) | Civil No. 3:16-cv-00013-GFVT-EBA |
| Plaintiff, | ) ) | |
| v. | ) ) | **MEMORANDUM OPINION** **&** |
| SHELBY COUNTY, KENTUCKY d/b/a SHELBY COUNTY ANIMAL SHELTER, et al., | ) ) ) ) | **ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Vicki Moore, individually, and in her capacity as Director of the Shelby County Animal Care Coalition, brings suit against Shelby County, Kentucky, d/b/a Shelby County Animal Shelter; Rob Rothenburger, individually and in his capacity as Shelby County Judge Executive; and Leon Federle, individually, and in his official capacity as Shelby County Animal Control Director. The Defendants have moved for summary judgment on the Plaintiff's claims, and for the reasons that follow, the Court GRANTS the Defendants' motion as to the First Amendment retaliation claim and the § 1983 supervisory liability claim and REMANDS the Plaintiff's remaining state law Kentucky Open Records Act claims for further consideration by the state court.

**I**

**A**

Vicki Moore is the director of the Shelby County Animal Care Coalition, an advocacy group that "supports the humane treatment of animals" at the Shelby County Animal Shelter. [R.

1-3 at 3.] In 2013, Ms. Moore became aware of "disturbing conditions" at the Shelby County Animal Shelter, including malnourished dogs, dirty cages, and dogs with chemical burns due to unsanitary conditions and unsafe cleaning practices. [*Id*.] Shelby County Animal Care Coalition was organized shortly after these findings and publicized these findings through their website. [*Id*. at 4.] The Shelby County Animal Care Coalition worked with the Shelby County Animal Shelter for a time to improve conditions in the shelter, but the relationship ended with Defendant Federle, the director of the animal shelter, barring the Coalition from entering the shelter. [*Id*.]

On February 6, 2015, an open records request was made to Defendant Rothenburger to inspect and copy all images, graphic representations, and audio on the security camera system at the Shelter. [*Id*.] Defendant Rothenburger advised Ms. Moore and the Animal Care Coalition that Defendant Federle should be contacted to retrieve the surveillance videos rather than him and that it would take six to eight weeks to locate and redact such videos. [R. 1-3 at 5; R 1-3 at 15.]

On May 11, 2015, a dog fight occurred at the Shelby County Animal Shelter, resulting in several dogs being injured. [*Id*. at 5.] Ms. Moore again attempted to obtain video surveillance of the Shelter pursuant to the Open Records Act. [*Id*.] Ms. Moore obtained an external hard drive and a technician to accompany her to copy the surveillance videos. [*Id*.] Mr. Federle agreed to meet Ms. Moore on May 21, 2015, to copy the surveillance videos, but Ms. Moore cancelled this meeting. [R. 1-3 at 5; R. 7 at 2.] The appointment was rescheduled for May 28, 2015, and Mr. Federle cancelled the appointment. [R. 1-3 at 5.] On June 5, 2015, Plaintiff was able to go to the Shelter in an attempt to transfer the surveillance videos to her hard drive. [R. 1-3 at 5.] Upon arrival, Ms. Moore and the technician who accompanied her found that all the surveillance videos had been deleted on May 31, 2015, at 1:53 a.m. [*Id*. at 6.] The Defendants maintains that

2

the files had been inadvertently deleted because the County had decided to switch to a five-day retention period for video files.  [*Id*.]

Mid America Security Systems administered the video files for the Animal Shelter and sent a letter dated June 18, 2015, that the video files had been deleted due to the five-day policy instituted by the County.  [*Id*.]  Mid America Security Systems also indicated that Defendant Federle did not know that the previous recordings had been erased when the new policy had been implemented.  [R. 1-3 at 17.]

This matter was referred to the Kentucky Attorney General, who issued a decision dated October 1, 2015.  [R. 1-3 at 15.]  The decision found that Mr. Federle and the Animal Shelter had subverted the intent of KRS 61.872(3)(a) by restricting access to open records.  [*Id*. at 16.]  The decision also found that the failure to preserve the camera record did not violate the Open Records Act, but referred the issue to the Department for Libraries and Archives as a record management problem.  [*Id*. at 18.]

On February 17, 2016, Defendants removed the Plaintiff's suit to federal court, based on this Court's original jurisdiction over Plaintiff's First Amendment Retaliation claim and supervisory liability claims pursuant to 42 U.S.C §1983; and supplemental jurisdiction over KRS §§ 61.870-884, 61.991, 519.060, and 171.990.  [*See* R. 1]  Defendants then moved for summary judgment on all claims.  [R. 6.]

**B**

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  A fact's materiality is determined by the substantive law, and a dispute is genuine if "the evidence is such that a reasonable jury could

3

return a verdict for the non-moving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The burden is initially on the moving party to inform "the district court of the basis of its motion, and [to identify] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of a material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once this burden is met, the nonmoving party, "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Further, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Instead, "the non-moving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

## II

### A

Count Five of Plaintiff's complaint alleges First Amendment Retaliation in violation of 42 U.S.C. § 1983. Plaintiff's arguments tend to conflate violations of Kentucky Open Records Act and First Amendment retaliation law. Nonetheless, a close look at relevant law shows that Plaintiff has not adequately proven a First Amendment Retaliation claim because she has not shown that an adverse action was taken against her that would chill an ordinary person from

pursuing their First Amendment rights. Therefore, summary judgment will be granted in favor of the Defendants as to Plaintiff's First Amendment retaliation claim.

As a preliminary matter, First Amendment Retaliation claims in violation of 42 U.S.C. § 1983 require that the Plaintiff suffer a "distinct and palpable" injury. *Thaddeus-X v. Blatter*, 175 F.3d 378, 396 (6th Cir. 1999).[1] This issue was not addressed by the parties and will not be addressed here, as the First Amendment retaliation claim fails as a matter of law.

"[C]ertain provisions of the Constitution define individual rights with which the government generally cannot interfere—actions taken pursuant to those rights are 'protected' by the Constitution." *Id*. at 387. 42 U.S.C. § 1983 "provides a remedy for these constitutional violations [when they are] committed by state actors." *Id*. at 386. To assert a claim under § 1983, the Plaintiff must prove that the Defendant took adverse action against her and "this adverse action was taken (at least in part) because of the protected conduct." *Id*. at 386.

Here, the Plaintiff asserts that Defendants retaliated against her because she was attempting to exercise her First Amendment rights. "First Amendment law is particularly context-driven. Not only does the Amendment protect a rather broad expanse of rights, but even within one category, such as speech, there are multiple levels of protection for different types of speech." *Id*. at 388. Case law acknowledges that the bulk of cases in First Amendment Retaliation claims are in the public employment setting and it is appropriate to draw on that line of reasoning when assessing First Amendment retaliation claims. *Thaddeus-X*, 175 F.3d at 388. For a retaliation claim to succeed, three elements must be proved:

> 1) [the Plaintiff] engaged in protected conduct, 2) the defendant took an adverse action that would deter a person of ordinary

---

[1] Though Plaintiff argues otherwise, *Thaddeus-X* is the controlling law in First Amendment retaliation claims and Plaintiff need not be exactly situated for the analysis stated there to apply. [*See* R. 7-1.]

5

>firmness from continuing to engage in that conduct, and 3) the adverse action was taken at least in part because of the exercise of the protected conduct.

*Holzemer v. City of Memphis*, 621 F.3d 512, 520 (6th Cir. 2010) (quoting *Thaddeus-X*, 175 F.3d at 394.).  For purposes of this analysis, this Court assumes that the first element has been met and that the Plaintiff engaged in protected conduct by requesting the Open Records at the animal shelter (*see generally Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 542 (6th Cir. 2012) (finding an open records request by a government employee was a type of protected speech for First Amendment retaliation analysis purposes).

In First Amendment retaliation law, an adverse action taken against the Plaintiff is "one that would 'deter a person of ordinary firmness' from the exercise of the right at stake. *Thaddeus-X*, 175 F.3d at 395 (quoting *Bart v. Telford,* 677 F.2d 622, 625 (7th Cir. 1982)). This test is a "static" test, taking into account context and the individuals whose rights are being retaliated against, but screens out "trivial actions" that are of "de minimis" significance. *Thaddeus-X*, 175 F.3d at 398.  Further, whether the actual Plaintiff was "chilled" to inaction is not relevant; the standard looks to the firmness of an "ordinary" person.  *Holzemer*, 621 F.3d at 520.  Some examples of cases that surpassed the "de minimis" requirement are defined in various case law.  *See*, *e.g.*, *Thaddeus-X*, 175 F.3d at 398 (holding that harassment, physical threats, and transfer of a prisoner to an area used house mentally disturbed inmates sufficed as adverse actions); *Holzemer*, 621 F.3d at 520 (holding that the unwarranted search of a local business and the obstruction of that business from continuing its business sufficed as adverse action); *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012) (quoting *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 724 (6th Cir.2010), stating that an adverse action "in the

6

employment context has traditionally referred to actions such as discharge, demotions, refusal to [hire], nonrenewal of contracts, and failure to promote" (internal quotations omitted).).

The third element of a First Amendment retaliation claim requires that the adverse action be motivated by the Plaintiff's protected conduct.  After the Plaintiff meets her burden of establishing that her protected conduct was a motivating factor behind the adverse action, the burden shifts to the Defendant to prove the opposite.  *See Thaddeus-X*, 175 F.3d at 398 (quoting *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274 (1977)).  To survive a finding of summary judgment, the Defendant must produce "evidence that would support a jury verdict," and "circumstantial evidence, like the timing of events" may be considered.  *Thaddeus-X*, 175 F.3d at 398.  The court may look to the "totality of the circumstances to determine whether an inference of retaliatory motive could be drawn."  *Vereecke v. Huron Valley Sch. Dist.,* 609 F.3d 392, 401 (6th Cir. 2010).

Turning to the case at hand, this Court finds that the Plaintiff does not meet her burden of proof as to the second element of the First Amendment retaliation claim and, therefore, the third element fails as well.  The second element requires that the Defendant took an action that would chill an ordinary person from engaging in the protected conduct, here the Plaintiff's First Amendment rights.  Contrary to the Defendants' argument, it's not relevant that the Plaintiff did in fact cancel a meeting with the Defendants, as it was not her responsibility to protect her own speech.  [*See* R. 6-18]  The only conduct that is relevant is the conduct of the Defendants.

Plaintiff argues that Defendants retaliated against her First Amendment in two ways.  First, Plaintiff argues that requiring her to schedule an appointment to see the Open Records at issue was a retaliatory action.  Further, the Plaintiff argues that the policy the Animal Shelter adopted, requiring that records be destroyed after five days, was another retaliatory action.  [*See*

7

R. 7-1 at 8 and 9.] Plaintiff alleges that Defendants purposefully deleted the records that were requested and used the 5-day policy as a cover. [*See* R. 7-1 at 9.]

Whether or not Defendants violated the Open Records Act is a separate question and the Plaintiff seems to conflate violations of the Open Records Act and First Amendment Retaliation. According to the memorandum from the Attorney General, it appears that requiring the Plaintiff to schedule an appointment to see open records does subvert the intent of the Kentucky Open Records Act. [*See* R. 1-3 at 4.] But First Amendment retaliation is an entirely separate analysis that requires an adverse act that would chill an individual from pursuing their speech further. Requiring an appointment to review records, while perhaps in violation of Kentucky's Open Records Act, does not have the chilling effect as described in relevant case law. In fact, the Defendants did continually attempt to make a time for the Plaintiff to come to the Animal Shelter to copy the relevant videos. The Defendants were responsive to Plaintiff's email and at no point told her she could not enter the shelter to copy the videos, even when the Plaintiff said she was coming very quickly and would no longer wait for an appropriate appointment. [R. 6-4 at 1.]

Turning to Plaintiff's second allegation of adverse action, the fact that old surveillance footage was erased perhaps indicates a "records management problem," but does not rise to the level of adverse action for a First Amendment retaliation claim. [R. 1-3 at 4.] As evidence that the records were deleted because Plaintiff was seeking them, Plaintiff submitted an affidavit from Kurt Pendleton asserting that the records were deleted as a result of someone intentionally sending commands to the system. [R. 6-3.] However, Defendants submitted an affidavit from Brandon Phelps of Mid America Security System, a third party administrator of the Shelter's video surveillance system, who confirmed that the Defendants had nothing to do with the lost files. [R. 6-5.] The two affidavits are not in competition. Brandon Phelps confirms that the

records were deleted, but reported that the records were deleted as a result of switching their system to a five day recording system. [*Id*. at 1.] "No individual from Shelby County Animal Shelter instructed or requested that any video be erased from the subject recordings" and "[n]o individual from Shelby County Animal Shelter erased any video from the subject recording system." [*Id*.] Plaintiff requests an inference that the Defendants purposefully deleted the camera recordings to prevent her from obtaining the videos. Construing all facts in favor of the Plaintiff, the nonmoving party, the affidavit from Brandon Phelps adequately addresses the Plaintiff's concerns and dismisses her allegations. Plaintiff's lone affidavit does not contradict the affidavit from Phelps.

Looking at the most mild level of adverse action in First Amendment retaliation law in *Holzemer*, 621 F.3d at 524, a city council member Defendant used offensive language to prevent a business owner from obtaining a permit to operate their business. The Defendant said, "Don't say anything else to me, or I am going to slam you on the floor, handcuff you, and take your (expletive) upstairs kicking and screaming. The best thing for you to do is leave this office and don't say anything else to me." *Id*. The Defendant also encouraged others to search the Plaintiff's business without a permit in violation of the Plaintiff's Fourth Amendment rights. *Id*. Since the Plaintiff business owner in this case was an average citizen, it is the most analogous to the current case. The level of adverse action experienced by the Plaintiff in *Holzemer* is not comparable to the level of adverse action experienced by the Plaintiff here, as Defendants requested she make an appointment to obtain records and inadvertently deleted files she had requested.

Plaintiff relies in part on *McBride v. Village of Michiana,* 100 F.3d 457 (6th Cir. 1996). This Court declines to follow her reasoning, as the heightened standard for First Amendment

9

retaliation defined there was overturned "by *Thaddeus–X* and its progeny." *Fritz*, 592 F.3d at 725. Plaintiff relies also on *Board of County Com'rs, Wabaunsee County, Kan. v. Umbehr*, 518 U.S. 668 (1996), a case deciding whether the First Amendment protects "independent contractors from the termination of at-will government contracts in retaliation for their exercise of the freedom of speech." There, contrary to Plaintiff's repeated argument that her speech is not comparable to that of a government employee, the court again uses the First Amendment retaliation standard used in the context of "government employees," the standard that has already been applied in the above analysis. *Id*. at 673.

Finally, since there was no adverse action taken against the Plaintiff, the third element of a First Amendment retaliation can naturally not be met, as it requires that the "adverse action" was taken "at least in part because of the exercise of the protected conduct." *Holzemer*, 621 F.3d at 520. Here, there was no adverse action.

The actions taken by Defendants against Plaintiff do not reached the level of adverse reaction required in First Amendment retaliation claims. A person of ordinary firmness would not have been chilled by the Defendant trying to schedule an appointment. Further, Plaintiff's insistence that Defendants have violated Kentucky's Open Records Act, while possibly true, does not affect this Court's analysis of her First Amendment retaliation claim. Accordingly, summary judgment is granted in favor of Defendants as to the First Amendment retaliation claim.

**B**

In Count 6 of Plaintiff's Complaint [R. 1-3], Plaintiff alleges supervisory liability according to § 1983 against Defendant Rothenburger as the Judge Executive and supervisor of Defendant Federle. Plaintiff clarifies in her Response to Defendant's Motion for Summary

Judgment that she is asserting an independent supervisory liability under a theory of individual liability. [R. 7 at 14.] Plaintiff is seeking to hold Defendant accountable based on his role as an individual rather than in his official capacity, so this Court's analysis will proceed under that assumption and not address supervisory liability as a respondeat superior argument.[2] [*See* R. 7 at 14.] As discussed above, no adverse actions were taken against the Plaintiff and Plaintiff has submitted no evidence that Defendant Rothenburger directed Defendant Federle's actions in any way. Accordingly, summary judgment is granted in favor of the Defendants.

Government employees acting in their individual capacity can be held liable for their actions in a limited range of circumstances. The standard developed in *Rizzo v. Goode*, 423 U.S. 362, 370 (1976), requires that there be a "direct and causal link between the acts of the individual [government employees] and the supervisory defendants." *Hays v. Jefferson Cty., Ky.,* 668 F.2d 869, 872 (6th Cir. 1982). There must be proof that a government actor, through their "deliberate conduct" was "the moving force behind the injury alleged." *Peatross v. City of Memphis*, 818 F.3d 233, 240 (6th Cir. 2016) (quoting *Shadrick v. Hopkins Cty., Ky.*, 805 F.3d 724, 751 (6th Cir. 2015). This is essentially the same analysis used for municipalities. *Hays*, 668 F.2d at 872; *see, e.g., Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978). Key to the analysis is that the supervisor must have taken some sort of action to cause the defendant to violate the plaintiff's rights. Inaction is not sufficient and the court is to look for "deliberate rather than inadvertent" actions," actions described as "gross negligence or recklessness." *Hays*, 668 F.2d at 873; *see also*, *Peatross*, 818 F.3d at 241. "[A]t a minimum, the plaintiff must show that the

---

[2] In Plaintiff's response, there is one sentence that refers to "[o]rganizational liability" and one that refers to Shelby County, perhaps as a liable municipal. These arguments are raised perhaps in addition to or in the alternative to the individual liability asserted in the complaint and the rest of the response. [R. 7 at 14.] This Court declines to analyze these arguments as they relate to supervisory liability as they were not raised in the complaint.

defendant at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Peatross*, 818 F.3d at 242 (internal quotations omitted); *see also Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

As outlined in the previous section, there were no adverse actions taken against the Plaintiff and, therefore, there can be no supervisory liability, as supervisory liability under § 1983 requires action. The Plaintiff has not shown how Defendant Rothenburger participated in any type of Constitutional violation. The case law makes clear that being in a supervisory role alone cannot cause a supervisor to be individually liable, but the action must be deliberate and the direct causal link. Plaintiff acknowledges this in her response brief as well, but makes no specific citation to the record and presents no additional evidence that Defendant Rothenburger engaged in any such action. [R. 7 at 15.] In Plaintiff's complaint, paragraphs 69-70, 72, 73, and 75, explicitly seek to impute liability simply by Rothenburger acting in his role as a supervisor. [*See* R. 1-3 at 11.] In the remaining paragraphs, Plaintiff asserts that Defendant Rothenburger directed Defendant Federle and other shelter agents to violate Plaintiff's rights. [*See* R. 1-3 at 11.] But Plaintiff has given no evidence and cited to no evidence to that effect in either her complaint or her response. [*See* R. 1-3; R. 7.] There is no genuine issue of material fact and summary judgment is appropriate.

Because Plaintiff offered no evidence that Defendant Rothenburger was in any way involved in Defendant Federle's actions and seek only to impute liability by his role as supervisor, which is not permitted in a § 1983 action, summary judgment in granted in favor of Defendants as to supervisory liability according to § 1983.

## C

Federal courts are courts of limited jurisdiction. In order to hear a suit, the Court must have subject-matter jurisdiction over it. *See, e.g., Thornton v. Southwest Detroit Hosp.*, 895 F.2d 1131, 1133 (6th Cir. 1990) (explaining a "federal court lacks authority to hear a case without subject matter jurisdiction"). The Plaintiff's First Amendment Retaliation and § 1983 supervisory liability claims were removable to this Court because the claims arose under federal law. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The remainder of Plaintiff's claims are based on Kentucky's Open Records Act and related statues. They are not federal questions, but were removed to this Court on the basis of supplemental jurisdiction. *See* 28 U.S.C. § 1367 ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."). Without the First Amendment Retaliation or the § 1983 supervisory liability claim, however, there is no longer a basis for supplemental jurisdiction over the Kentucky Open Records Act violations.

Having already dismissed the claim arising under federal law, any remaining state law claims are best reserved for the state courts. *See, e.g., Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) (holding that "a federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state law claims"). Accordingly, the Plaintiff's claims related to Kentucky's Open Records Act in Counts One through Four of the complaint are properly remanded.

## III

Therefore, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. The Defendants' Motion for Summary Judgment [R. 6] is **GRANTED** as to Counts Five and Six of the Plaintiff's Complaint;

2. Counts Five and Six of Plaintiff's Complaint regarding First Amendment retaliation and supervisory liability according to § 1983 are **DISMISSED WITH PREJUDICE**;

3. Counts One through Four of the Plaintiff's Complaint regarding state law violations are **REMANDED** for further consideration by the state court;

4. The pending motion [R. 12] is **DENIED, AS MOOT**; and

5. This case is **STRICKEN** from the Court's active docket.

This the 9th day of February, 2017.

Gregory F. Van Tatenhove
United States District Judge