UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

|  |  |  |
|---|---|---|
| VICKI MOORE, individually and in her capacity as director of the Shelby County Animal Care Coalition, | ) ) ) ) ) | |
| Plaintiff, | ) ) | Civil No. 3:16-cv-00013-GFVT-EBA |
| v. | ) ) | **MEMORANDUM OPINION** |
| SHELBY COUNTY, KENTUCKY d/b/a SHELBY COUNTY ANIMAL SHELTER, et al., | ) ) ) ) | **&** **ORDER** |
| Defendants. | ) | |

\*\*\*    \*\*\*    \*\*\*    \*\*\*

This matter is before the Court on Defendant's Second Motion for Summary Judgment. [R. 49.] For the following reasons, the Court will **GRANT** the motion.

**I**

Vicki Moore is the director of the Shelby County Animal Care Coalition, an advocacy group that "supports the humane treatment of animals" at the Shelby County Animal Shelter. [R. 1-3 at 3.] In 2013, Ms. Moore became aware of "disturbing conditions" at the Shelby County Animal Shelter, including malnourished dogs, dirty cages, and dogs with chemical burns due to unsanitary conditions and unsafe cleaning practices. *Id*. Shelby County Animal Care Coalition was organized shortly after these findings and publicized these findings through their website. *Id*. at 4. The Shelby County Animal Care Coalition worked with the Shelby County Animal Shelter for a time to improve conditions in the shelter, but the relationship ended with Defendant Federle barring the Coalition from entering the shelter. *Id*.

On February 6, 2015, an open records request was made to Defendant Rothenburger to

inspect and copy all images, graphic representations, and audio on the security camera system at the Shelter. *Id*. Defendant Rothenburger advised Ms. Moore and the Animal Care Coalition that Defendant Federle should be contacted to retrieve the surveillance videos rather than him and that it would take six to eight weeks to locate and redact such videos. [R. 1-3 at 5; R 1-3 at 15.]

On May 11, 2015, a dog fight occurred at the Shelby County Animal Shelter, resulting in several dogs being injured. *Id*. at 5. Ms. Moore again attempted to obtain video surveillance of the Shelter pursuant to the Open Records Act. *Id*. Ms. Moore obtained an external hard drive and a technician to accompany her to copy the Surveillance Videos. *Id*. Mr. Federele agreed to meet Ms. Moore on May 21, 2015, to copy the Surveillance Videos, but Ms. Moore cancelled this meeting. [R. 1-3 at 5; R. 7 at 2.] The appointment was rescheduled for May 28, 2015, but this time Mr. Federle cancelled the appointment. [R. 1-3 at 5.] On June 5, 2015, Plaintiff was able to go to the Shelter to transfer the videos. [R. 1-3 at 5.] Upon arrival, Ms. Moore and the technician who accompanied her found that all the Surveillance Videos had been deleted on May 31, 2015, at 1:53 a.m. *Id*. at 6. The Defendants maintain that the files had been inadvertently deleted because the County had decided to switch to a five-day retention period for video files. *Id*.

At all relevant times, Mid America Security Systems handled the oversight and maintenance of Shelby County Animal Shelter's security systems. [R. 49-1 at 6.] Following Ms. Moore's records request, the shelter switched from a thirty to five-day retention period for surveillance videos. *Id.* Mid America Security Systems administered the video files for the Animal Shelter and sent a letter dated June 18, 2015, that the video files Ms. Moore requested had been deleted due to the five-day policy instituted by the County. *Id*. There is a dispute between the parties as to whether Mid-America informed Defendants Federle or Rothenburger

that existing videos might be lost in the transition to the five-day retention period, or whether Defendants instructed Mid-America to erase the videos. [*See* R. 49-1 at 6; R. 63 at 10.] Since the reversal of this Court's order granting summary judgment, Defendants have filed a third-party complaint against Mid-America, bringing it into this action. [R. 35.]

This matter was referred to the Kentucky Attorney General, who issued a decision dated October 1, 2015. [R. 1-3 at 15.] The decision found that Mr. Federle and the Animal Shelter had subverted the intent of KRS 61.872(3)(a) by restricting access to open records. *Id*. at 16. The decision also found that the failure to preserve the camera record did not violate the Open Records Act, but referred the issue to the Department for Libraries and Archives as a record management problem. *Id*. at 18.

On February 17, 2016, Defendants removed the Plaintiff's suit to federal court, based on this Court's original jurisdiction over Plaintiff's First Amendment Retaliation claim and Supervisory Liability claims pursuant to 42 U.S.C §1983; and supplemental jurisdiction over claims arising under KRS §§ 61.870-884, 61.991, 519.060, and 171.990. [*See* R. 1] Defendants then moved for summary judgment on all claims. [R. 6.]

This Court granted Defendants' first motion for summary judgment, finding that Plaintiff's First Amendment Retaliation and Supervisory Liability claims failed as a matter of law. [R. 13.] Having granted summary judgment to Defendants on Plaintiff's federal law claims, Plaintiff's state law claims were remanded to the state court. *Id.* Ms. Moore appealed this Court's decision as to the First Amendment Retaliation claim to the Sixth Circuit, which overturned this Court's order.[1] *See* Moore v. Shelby County, 718 F. App'x 315 (6th Cir. 2017).

---

[1] As to the Supervisory liability claim, the Sixth Circuit found this Court "correctly concluded that Plaintiff's municipal liability argument was not raised in the complaint." *Moore v. Shelby County*, 718 F. App'x 315, 318 (6th Cir. 2017). Further, "Plaintiff did not raise the district court's failure to consider the argument as an error in her opening brief. . . . Thus, this argument has also been forfeited." *Id.*

The Sixth Circuit found that Ms. Moore had not been afforded adequate opportunity to conduct discovery, and therefore summary judgment was inappropriate at that time. *Id.*

Over one year has passed since the Sixth Circuit reversed this Court's order granting summary judgment, and in that time parties have conducted the discovery contemplated in the Sixth Circuit's opinion. In December 2018, Defendants again moved for summary judgment on all claims. Also before the Court is Defendant and Third-Party Defendant's Joint Motion to Dismiss Third-Party Defendant [R. 50] and Plaintiff's Motion for Leave to File a Cross-Claim [R. 52].

II

A

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A fact's materiality is determined by the substantive law, and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The burden is initially on the moving party to inform "the district court of the basis of its motion, and [to identify] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of a material fact." *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 323 (1986).  Once this burden is met, the nonmoving party, "must set forth specific facts showing that there is a genuine issue for trial."  Fed.R.Civ.P. 56(e).  Further, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact."  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989).  Instead, "the non-moving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact."  *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

**B**

Defendant's foot is in the federal court door by way of Ms. Moore's First Amendment retaliation claim, brought under 42 U.S.C. § 1983.  To succeed on this claim, Ms. Moore must show that:

> 1) [she] engaged in protected conduct, 2) the defendant took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct, and 3) the adverse action was taken at least in part because of the exercise of the protected conduct.

*Holzemer v. City of Memphis*, 621 F.3d 512, 520 (6th Cir. 2010) (quoting *Thaddeus-X*, 175 F.3d at 394.).  Defendants concede, for purposes of summary judgment, that Ms. Moore's "efforts to make the public aware of the persistent and egregious abuse in the Shelby County Animal Shelter," and her "publications and other speech pertaining to Defendants' practices," constitute protected conduct.  [R. 1-3 at 10.; R. 49-1 at 8.]  Therefore, the Court will proceed to the second and third elements of the *Holezemer* framework.

As to the second element, an adverse action is "one that would 'deter a person of ordinary firmness' from the exercise of the right at stake."  *Thaddeus-X*, 175 F.3d at 395 (quoting *Bart v.*

5

*Telford,* 677 F.2d 622, 625 (7th Cir. 1982)). This test is a "static" test, taking into account context and the individuals whose rights are being retaliated against, but screens out "trivial actions" that are of "de minimis" significance. *Thaddeus-X*, 175 F.3d at 398. "[S]ince there is no justification for harassing people for exercising their constitutional rights [the effect on freedom of speech] need not be great to be actionable." *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999). However, "it would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise." *Id.* Further, whether the actual Plaintiff was "chilled" to inaction is not relevant; the standard looks to the firmness of an "ordinary" person. *Holzemer*, 621 F.3d at 520.

From the outset of litigation, the adverse actions Ms. Moore claims to have suffered include (1) being required to make appointments to view records in violation of Kentucky's Open Records Act; (2) the deletion of the videos Ms. Moore requested pursuant to Kentucky's Open Records Act; and (3) being prohibited from volunteering in Shelby County Animal Shelter. [R. 1-3 at 10.] This Court previously granted summary judgment to the Defendants on this claim in part because "[r]equiring an appointment to review records, while perhaps in violation of Kentucky's Open Records Act, does not have the chilling effect as described in relevant case law." [R. 13 at 8.] In reversing this Court's order, the Sixth Circuit addressed the sufficiency of the alleged "adverse action" as follows:

> Moore also pleads the second and third elements: that the deletion of records would deter a person of ordinary firmness from engaging in such speech and publication, and that this deletion was motivated at least in part by Moore's speech. Further discovery is needed to answer whether these are genuine issues of material fact.

6

*Moore v. Shelby Cty.*, 718 F. App'x 315, 321 (6th Cir. 2017). It is unclear to this Court why further discovery was necessary on the second element of the *Holzemar* framework. Regardless, the adverse actions alleged by Ms. Moore are the same after discovery as those alleged in the initial complaint. The question, therefore, is whether the adverse actions alleged would "deter a person of ordinary firmness" from exercise of their First Amendment rights. *See Thaddeus-X*, 175 F.3d at 395. In the view of this Court, the answer is decidedly 'no.'

"The term 'adverse action' is drawn from employment case law; examples in that context include discharge, demotions, refusal to hire, nonrenewal of contracts, and failure to promote." *Thaddeus-X*, 175 F.3d at 396. Ms. Moore was not employed by Shelby County Animal Shelter, and so the examples of adverse action in the workplace are less than helpful in analyzing this case. Shelby County could not, and did not, undertake any of the "adverse actions" that are commonly seen in the employment context. The courts in this Circuit have had less occasion to analyze First Amendment retaliation claims outside of the employment context.

One of the first cases to do so was *Fritz v. Charter Township of Comstock*. *See Fritz v. Charter Township of Comstock*, 592 F.3d. 718, 724 (6th Cir. 2010) ("Since our en banc decision in *Thaddeus-X* . . . this is one of the first concerning a private individual . . . ."). The plaintiff in *Fritz* argued the defendants had taken adverse actions against her by "den[ying] zoning and signage variances" and by threatening her relationship with her employer, Farm Bureau. *Fritz*, 592 F.3d at 723. In *Fritz*, the defendant's contacted Farm Bureau and threatened "its presence in the community would be jeopardized" if the plaintiff did not refrain from criticizing city officials in the press or at public meetings in the future. *Id.* There, the Sixth Circuit found, in pleading "a threat to her economic livelihood directly traceable to Defendants' conduct," Fritz had pled an adverse action sufficient to survive a motion to dismiss. *Id.* at 729. Ms. Moore has not

7

experienced a threat to her livelihood by Defendants' conduct. Instead, she has experienced inconvenience and been denied access to records. Other examples of adverse actions from the case law are similarly more severe than what Ms. Moore has alleged. *See Paterek v. Vill. of Armada*, 801 F.3d 630 (6th Cir. 2015) (adverse action consisting of "numerous tickets that were issued to plaintiffs, the suits that were initiated against them, and the loss of John Paterek's position on the [Downtown Development Authority]"); *Bloch v. Ribar*, 156 F.3d 673 (6th Cir. 1998) (finding an adverse action where defendant released highly personal details of vicitm's rape to the press).

By the same token, the Sixth Circuit has actually declined to find an adverse action in cases where the conduct was more egregious than that alleged by Ms. Moore. *See Stolle v. Kent State University*, 610 F. App'x 476, 484 (6th Cir. 2015) (finding no adverse action where "1) [plaintiff] was verbally reprimanded for communicating with state legislators; 2) he was ordered to cease all communications with state legislators; 3) he was led to believe that if he continued such communications he would lose his job; and 4) he was told to discontinue attendance at meetings of the State Committee of Financial Literacy"). In light of Sixth Circuit precedent, this Court simply cannot find that Ms. Moore suffered an adverse action when she was asked to make appointments to view videos, the videos were deleted, or when members of the coalition were barred from volunteering at Shelby County Animal Shelter. The conduct alleged fails to rise to the level of severity seen in other cases in which the Sixth Circuit has found an adverse action, or even the severity in some instances where it has not.

Because Ms. Moore has not suffered an adverse action sufficient to "deter a person of ordinary firmness" from exercising their First Amendment rights, the third prong of the *Holzemer* framework also is not met. That is not to say that there is no genuine dispute of

8

material fact as to the motivations behind the actions taken against Ms. Moore. In fact, the record is fraught with examples and evidence that, when viewed in a light most favorable to the non-moving party, strengthen the inference that Defendants asked Ms. Moore to make appointments and deleted videos "at least in part because of [Ms. Moore's] exercise of the protected conduct." *See Holzemer*, 621 F.3d at 520. But because Defendants' actions did not amount to an adverse action in light of Sixth Circuit precedent, their motivation is not relevant. Ms. Moore's claim must fail. Summary judgment is granted in favor of the Defendants.

## C

Federal courts are courts of limited jurisdiction. In order to hear a suit, the Court must have subject-matter jurisdiction over it. *See, e.g., Thornton v. Southwest Detroit Hosp.*, 895 F.2d 1131, 1133 (6th Cir. 1990) (explaining a "federal court lacks authority to hear a case without subject matter jurisdiction"). The Plaintiff's First Amendment Retaliation and § 1983 supervisory liability claims were removable to this Court because the claims arose under federal law. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

The remainder of Plaintiff's claims are based on Kentucky's Open Records Act and related statues. They are not federal questions, but were removed to this Court on the basis of supplemental jurisdiction. *See* 28 U.S.C. § 1367 ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."). Without the First Amendment Retaliation or the § 1983 supervisory liability claim, however,

there is no longer a basis for supplemental jurisdiction over the Kentucky Open Records act violations.

Having already dismissed the claim arising under federal law, any remaining state law claims are best reserved for the state courts. *See, e.g., Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) (holding that "a federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state law claims"). Accordingly, the Plaintiff's claims related to Kentucky's Open Records Act in Counts One through Four of the complaint are properly remanded.

### III

At its heart, this is a dispute about the Kentucky Open Records Act. Whether Shelby County Animal Shelter inappropriately deleted videos, and whether they are presently compliant with the Kentucky Open Records Act is best decided by the state courts. Therefore, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. The Defendants' Second Motion for Summary Judgement **[R. 49]** is **GRANTED** as to Count Five of the Plaintiff's Complaint;

2. Count Five of Plaintiff's Complaint regarding First Amendment retaliation, brought under § 1983, is **DISMISSED WITH PREJUDICE**;

3. Counts One through Four of the Plaintiffs' Complaint regarding state law violations are **REMANDED** for further consideration by the state court;

4. The pending motions **[R. 50; R. 52]** are **DENIED AS MOOT**; and

5. This case is **STRICKEN** from the Court's active docket.

This the 22d day of February, 2019.

Gregory F. Van Tatenhove
United States District Judge